UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:  Case Number: 10-15242-7

SHEILA M. SPENCER,

        Debtor.

---

# DECISION

This closed Chapter 7 case is before the court on the Debtor's motion to reopen the case, pursuant to § 350(b) of the Bankruptcy Code (Title 11, U.S.C.), for the stated purposes of administering assets that might come into existence, to amend Schedules D and F, and "to have the case administered on the basis of true facts" (hereinafter the "Motion"). The Motion is opposed by PNC Bank, N.A. ("PNC"). For the reasons set forth herein, the court having considered the pleadings, exhibits, and arguments of counsel hereby denies the Motion.

## I.   Jurisdiction

This court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and Administrative Order 161 of the United States District Court for the Western District of Wisconsin.  Pursuant to these provisions, the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine all cases under title 11."  Accordingly, this court has jurisdiction to determine whether the present case should be reopened.  *See In re Redmond*, 380 B.R. 179, 182 (Bankr. N.D. Ill. 2007) (citing *Virginia v. Collins* (*In re Collins*), 173 F.3d 924, 928 (4th Cir. 1999)).

## II.  Facts and Background

Debtor, Sheila Spencer, filed a Chapter 7 petition on July 9, 2010, to deal with various debts including a home mortgage that was in default and in foreclosure. Debtor's schedules identified FNMC (a division of National City Bank of Indiana) ("FNMC") as the first mortgage holder on the property ("Marshfield Property"), and the Statement of Financial Affairs confirmed a foreclosure action was pending in Wood County Circuit Court (Schedule D, ECF No. 1).  The schedules do not list the FNMC secured claim as unliquidated, contingent, or disputed.  Schedule F also lists (apparently for notice purposes) a Wisconsin law firm and describes the connection to the case as "collecting for PNC Home Mortgage." *Id.*  Amended Schedules C and F and an amended Statement of Financial Affairs were filed by the Debtor on August 30, 2010 (ECF No. 12).  Those amendments did not, however, revise any of the information related to the note and mortgage.

It is undisputed that Debtor executed and delivered a note and mortgage dated July 29, 2005, to FNMC.  A foreclosure action was started on April 7, 2009, to foreclose that mortgage.  The Chapter 7 petition filed by Debtor stayed the foreclosure proceeding.

On August 10, 2010, PNC filed a Motion for Relief from Stay to proceed with the foreclosure ("Stay Motion").  The Stay Motion stated that PNC was the holder of the note and mortgage and attached copies of those documents as exhibits (ECF No. 9).  No objection was filed, and the court entered an order granting PNC relief from the stay on

September 7, 2010. There were no assets for distribution in the bankruptcy and the bankruptcy case was ultimately closed on October 19, 2010.

PNC and the Debtor continued their litigation of the foreclosure in state court. Numerous motions were filed in that matter including a motion for summary judgment. Eventually, however, the matter once again came before this court.

On July 31, 2012, the litigation between the parties came back before this court in the form of a Motion for Ex Parte Restraining Order, Temporary Injunction and Permanent Injunction and a Motion for Violation of the Injunction Order. (ECF Nos. 21 and 22). Central to both of these motions was the assertion by the Debtor that proceeding in the state court foreclosure was a violation of provisions of the Code and that the Wood County proceedings should be stayed and enjoined.

A hearing was held on these motions on August 3, 2012. On that same date, a proposed order denying the motions was submitted. On August 13, 2012, the Debtor filed an objection to the form of the proposed order arguing that the form was incorrect because introductory recitals should state the injunction motion was denied because the matter, if pursued, should be raised by an adversary proceeding. On August 17, 2012, an order was entered denying the motion for injunctive relief, including a statement that the matter was not presented in accordance with Fed. R. Bankr. P. 7001(7). The order also denied the motion for contempt.

It appears that at some point in 2012, the Debtor raised the issue of whether PNC was the owner and holder of the mortgage in the Wood County proceeding. PNC

responded by asking the Wood County Circuit Court to ratify commencement of the action or, in the alternative, to substitute PNC as the real party in interest (Exhibit A, ECF No. 34). On December 21, 2012, the Wood County Circuit Court heard that motion, determined PNC could proceed as the real party in interest, and ruled it would proceed with the hearing on PNC's motion for summary judgment. The summary judgment motion was originally scheduled to be heard on January 5, 2012, but was delayed in light of various motions filed in the case including the motion related to the ownership of the note and mortgage.

Once again, it appeared the proceedings in this court were complete. That appearance, however, was fleeting. On January 10, 2013, the Debtor filed a Notice of Removal seeking to remove the foreclosure proceeding from the Wood County Circuit Court to the United States District Court for the Western District of Wisconsin. Simultaneously, Debtor filed the instant Motion.

The Motion seeks to reopen Debtor's bankruptcy proceeding to "administer assets" the Debtor speculates she might recover based on a variety of state and federal law claims against Freddie Mac, National City Mortgage Company, PNC, and the attorneys for these entities. Additionally, she seeks to amend her bankruptcy schedules, revisit for an unspecified reason certain claims appearing on Schedule F, and to add Freddie Mac to Schedule F based on her newly-asserted belief that it is actually a party in interest and an unsecured creditor.

The Motion alleges that in May 2012 the Debtor came to the realization she did not know to whom she was indebted on the home note and mortgage. Counsel for Debtor then "came across an idea" that perhaps PNC was not now the real owner or holder of the note and mortgage and, perhaps, Debtor was the victim of mortgage fraud stemming from alleged defects in the origination or transfer of the promissory note and mortgage. Further, she asserts that in the course of perpetrating this fraud, the accused entities and individuals violated the Truth in Lending Act, the Real Estate Settlement Practices Act, the Fair Debt Collection Practices Act, the Racketeer Influenced Corrupt Organizations Act, and the Wisconsin Organized Crime Control Act. She also alleges various species of fraud, libel, breach of contract, intentional infliction of emotional harm, and violations of her constitutional rights under 42 U.S.C. § 1983.  She maintains she does not seek a stay of the litigation with PNC.

All of these claims are based on counsel's sudden "discovery" - almost four years after the commencement of the foreclosure action and more than two years after the Chapter 7 was closed – that she might argue the claims were not owned by PNC.  This theory is based on documents that have been in Debtor's possession for several years. The arguments were or could have been advanced in one form or another before the Motion was filed. Indeed, her Motion does not present any facts that were not previously presented to this court or to the Wood County Circuit Court years ago.

**III.    Discussion**

Section 350(b) of Title 11 of the United States Code states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (2012). The bankruptcy court has broad discretion whether to reopen a bankruptcy case. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010). Exercising that discretion, the "bankruptcy courts may rule on motions to reopen without a hearing." *Id.* at 798-99.

In *Redmond*, the United States Court of Appeals for the Seventh Circuit established a non-exclusive list of factors for a bankruptcy court to consider when ruling on a motion to reopen. *Id.* at 798. The list includes: (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims. *Id.*

Based on consideration of these factors as applied to the facts before the court, the Debtor has not demonstrated cause to reopen her bankruptcy proceedings.

*A.    Timeliness*

The *Redmond* court noted that "[t]he passage of time weighs heavily against reopening. The longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be. In assessing whether a motion is timely, courts may consider the lack of diligence of the party seeking to reopen and the prejudice to the nonmoving party caused by the delay." 624 F.3d at 799. Moreover,

while the "[p]assage of time in itself does not constitute prejudice," "delay may be prejudicial when it is combined with other factors." *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993).

At the time her bankruptcy was filed, the Debtor was aware that FNMC, PNC's predecessor in interest, asserted a secured claim against the Marshfield Property. She listed FNMC as a secured creditor on her Schedule D. Later, she opted not to oppose PNC's Stay Motion. After receiving a discharge, she resumed litigating issues relating to PNC's foreclosure action in Wood County Circuit Court. While the precise chronology of events in the state court action has not been presented by either party, it suffices to note that the original foreclosure action began more than a year before Ms. Spencer filed her bankruptcy petition. Therefore, the core of her dispute with the parties named in her Motion - the foreclosure of the Marshfield Property - has been pending for almost four years.

Despite this considerable passage of time, the Debtor only now purports to have "come across an idea" that led her to "two new paths" that might substantiate her defense to PNC's foreclosure action. However compelling this discovery might be to the Debtor and her attorney, the fact remains that she had more than enough time to investigate and to bring it to the attention of the court while the bankruptcy case was open.

Indeed, the opportunity to dispute the validity of PNC's claim of ownership of the note and mortgage was squarely presented during the bankruptcy. The record from

the bankruptcy case reveals that PNC filed its Stay Motion on August 10, 2010, to proceed against the Marshfield Property. The Debtor filed no objection to that motion, and on September 8, 2010, the court entered an order granting the requested relief. The stay was never reimposed, and there is no indication that the Debtor ever contested the issue during the pendency of the bankruptcy proceeding.

Additionally, the Debtor neglects to explain why this argument was not raised during the past two years of litigation before the state court other than in the context of the motion substituting PNC that was decided December 21, 2012, by the state court. Indeed, her Motion seems to imply either that this court is the first forum in which she has sought to squarely advance her new theory, or that she is advancing it for the first time simultaneously at this court and the district court.

This court is therefore puzzled - if not suspicious - why the Debtor now decides to bring her new theories to bear. Except perhaps that her attorney suddenly had what she considers a revelation in the recent past, the Debtor provides no explanation for the failure to make this argument during the bankruptcy, for the delay in filing the present Motion, or for her failure to argue it to the state court. The documents now called into question as part of her newly-proffered theories have been available to the Debtor since the foreclosure proceeding began. At the very least, they have been available since August 10, 2010, when the recorded mortgage and note were attached as exhibits to PNC's Stay Motion. This further supports the conclusion that the Motion is not timely.

Debtor has demonstrated significant delay in this case. She was aware of the position of FNMC and PNC in 2009 that the note and mortgage were in default. She did not object or defend the foreclosure action. Instead, more than a year after the commencement of the foreclosure, she filed her bankruptcy. When PNC filed its Stay Motion to continue the foreclosure, the Debtor remained silent and took no action to oppose that motion. Instead, well after the foreclosure proceeded she finally filed opposition in the state court. Then, almost two years after relief from the stay had been granted, and failing to achieve the results she intended, she filed motions for sanctions and injunctive relief in this court. Those motions were denied in August 2012. Once again, the Debtor turned to litigation in the state court. Only when - once again - her arguments were rejected in that forum did she turn to the federal courts by filing both the notice of removal and the Motion. Debtor's actions in this case are an example of the mistaken belief that debtors have eternal access to federal courts for all disputes related in any way to debts handled in the bankruptcy. *See In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002). This is another factor weighing against reopening this case.

### B.  *Entitlement to bankruptcy relief*

The Debtor's severe tardiness is not the only factor that weighs against reopening this case. Her motion urges that the case be reopened in order to administer assets "to be recovered in the federal court action." She overlooks the fact that as of this moment there are <u>no</u> assets to administer. The Debtor would have this court take an action that,

regardless of her stated intention,[1] might lead to arguments to reimpose the automatic stay in the highly uncertain event that she might obtain a recovery either in the district court or, if the matter is remanded, at the state court. Thus, a nearly four-year-old foreclosure proceeding could be paused by this court a second time to make way for brand new counterclaims stemming from the very same facts that formed the basis of the foreclosure action in the first place. This result would be counter to principles of judicial economy, fairness, and common sense.

      Moreover, were it to grant the Debtor's Motion, because the assets she seeks to have administered are, at present, entirely hypothetical, this court would be sidelined until her claims were finally adjudicated elsewhere and she obtained a recovery.  Her entitlement to relief from this court therefore hinges on her entitlement to a recovery on her pending claims. The pending claims are all premised on the Debtor's theory that either FNMC did not exist or that PNC does not now own or properly hold the note and mortgage. The former theory appears to be contradicted by the documents, submissions of counsel, the Debtor's schedules, and the court docket.  The latter is contrary to the conclusion reached in granting relief from the stay and in the recent decisions by the Wood County Circuit Court. Since the likelihood of her recovery is both unknowable and highly speculative, this court will not grant a motion to reopen on the basis of mere speculation. To do so is not in the interests of judicial economy.

---

[1] At the hearing on the Motion, Debtor's counsel stated that she did not intend for the automatic stay to be reimposed; instead, she simply seeks the opportunity to amend her schedules to add Freddie Mac to Schedule F.

There is another facet of the Debtor's argument that is concerning. If the court were to grant her Motion, she indicates an intention to amend her schedules to add Freddie Mac as a nonpriority unsecured creditor on Schedule F. It is unclear what she hopes to achieve now from this maneuver. There is the suggestion that her attorney has concluded the loan may now somehow be owned by Freddie Mac. If so, adding that entity as an unsecured creditor is of questionable point. Additionally, there is no evidence that at the time the bankruptcy was commenced in 2010 Freddie Mac had any connection to this matter. Further, as the docket confirms, the loan was owned by FNMC and its interests were transferred to PNC. While the Debtor states an intention to amend Schedule D, no explanation of the nature of the amendment is disclosed. There were only two secured creditors listed on Schedule D - FNMC as the first mortgage holder and Bank of America as the second mortgage holder. Neither were listed as contingent, unliquidated, or disputed. There is no suggestion the Debtor wants to add another person to Schedule D. Thus, the only explanation would be either to delete one of these two creditors or to amend the schedule to assert that the claim(s) is either contingent, unliquidated, or disputed. It is clear the Debtor now disputes the FNMC claim, so amending the schedules to "check the box" is a pointless exercise. From the history of the dispute between the parties, it appears the only reasons would be to cause further delay, or to otherwise support an assertion that PNC is not a proper party in the foreclosure.

In any event, there were no assets to be distributed in the bankruptcy proceeding and there was no claim-bar date set, so barring evidence that the debt could be excepted from discharge - and there is no indication that is the case here - the desire to retroactively add an unsecured creditor to the schedules provides no additional cause to reopen her case. *Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 111 (3rd Cir. 1996); *In re Guseck*, 310 B.R. 400, 404-05 (Bankr. E.D. Wis. 2004). Moreover, if this is a gambit to relitigate an issue that was decided here two years ago, it is inappropriate.

If the Debtor does, in fact, ultimately obtain a recovery, then this court could consider a motion to reopen the case in order to administer actual assets. Until such assets exist, however, she must litigate her claims in the appropriate forum and there is no relief required or available in this court.

### C.     *The appropriate forum*

The gravamen of the dispute between the Debtor and PNC is not whether there is an unpaid obligation or whether a mortgage was granted to secure that obligation. Debtor acknowledges that she borrowed the money to purchase the house and that she signed both the note and mortgage. It is also undisputed that there are substantial sums that remain unpaid.  Rather, it is a dispute about who really is the current owner and holder of the note evidencing the obligation and the related mortgage.  However, those are questions properly addressed in the state court foreclosure action (or in the district court should the removal of the action be sustained).  This is another factor weighing

against reopening the bankruptcy case. *Redmond,* 380 B.R. at 189 (citing *Elias v. United States Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir. 1999)).

There are no special bankruptcy rules or provisions to identify the owner and holder of the note and mortgage. To the contrary, the issue is a matter of state law under the Wisconsin Uniform Commercial Code and related case law. *See* Wis. Stat. §§ 403.205 and 403.301; *Chafee Land Co. v. Clark*, 171 Wis. 408, 177 N.W. 609 (Wis. 1920). Further, both this court in ruling on the Stay Motion and the Wood County Circuit Court concluded that PNC was entitled to pursue the foreclosure action.

Debtor's argument seeks, indirectly, to have this court permit an amendment of schedules that would place in question rights previously addressed in this forum. Multiple opportunities to prosecute the arguments now presented were forgone by Debtor. She did not dispute the entitlement of FNMC to bring the foreclosure action in 2009. In 2010, the Debtor listed FNMC as an undisputed secured creditor in the schedules she attested, under penalty of perjury, as true and correct. In those same schedules, the Debtor disclosed the existence of PNC and the fact it was pursuing collection on the home mortgage. No objection was raised when PNC filed its Stay Motion seeking to pursue the foreclosure action on the note and mortgage. More than two years passed following the grant of relief from the stay before counsel for Debtor formed the theory she now advances (four years into the foreclosure action) that there are defects in the documents and ownership. Neither is the Motion the first time the

allegations have been asserted. They were raised - and rejected - in the Wood County Circuit Court in December 2012.

Finally, to the extent that the Debtor believes there are defenses to the foreclosure action based on the ownership of the documents or the identity of proper parties, there is ample remedy under state law in either the state court or the district court. To render a judgment in the foreclosure action, the trial court must determine the amount owed to PNC. This same issue is central to the claims the Debtor now suggests could become assets in the bankruptcy. If the Debtor were to prevail and have an affirmative recovery in the state or district court, it would be possible to reopen the bankruptcy case to administer such assets. However, after such a long history of litigation and in light of the lack of success in the claims demonstrated so far, reopening the case would accomplish no material result.

## IV. Conclusion

For the reasons set forth above, Debtor's Motion to reopen her bankruptcy case is denied. A separate order will be entered so providing.

Dated: February 12, 2013

BY THE COURT:

/s/ Catherine J. Furay

Hon. Catherine J. Furay
U.S. Bankruptcy Judge